UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------x
                               :
UNITED NATIONAL INSURANCE      :   Civ. No. 3:19CV01265(JAM)
COMPANY                        :
                               :
v.                             :
                               :
MNR HOTEL GROUP/363 ROBERTS    :
PARTNERS, LLC, et al.          :   April 1, 2021
                               :
-------------------------------x
```

**RULING ON DEFENDANTS' MOTION TO COMPEL [DOC. #59]**

On January 28, 2021, Judge Jeffrey A. Meyer referred a discovery dispute in this matter to the undersigned. [Docs. #48, #49]. In response to the referral, the undersigned entered an Order requiring that on or before February 12, 2021, the parties meet and confer "in a good faith effort to resolve the current discovery dispute." Doc. #50.

On February 16, 2021, the undersigned held a telephonic discovery conference, during which counsel reported on their efforts to amicably resolve the instant discovery dispute. See Docs. #51, #53, #54. Despite those efforts, counsel were unable to resolve certain issues related to plaintiff United National Insurance Company's ("United") assertion of the attorney-client privilege and work product doctrine to certain documents and communications. Accordingly, the Court ordered defendants MNR Hotel Group/363 Roberts Partners, LLC and DNA Lodging East

1

Hartford, LLC (collectively "MNR") to file a motion to compel on or before February 23, 2021. See Doc. #53. The Court ordered United to file its response on or before March 2, 2021. See id. Pursuant to the Court's Order, on February 23, 2021, MNR filed a Motion to Compel Discovery [Doc. #59], to which United timely filed a memorandum in opposition, [Doc. #61].

For the reasons stated below, MNR's Motion to Compel [**Doc. #59**] is **GRANTED, in part, and DENIED, in part.**

## I. Background

United brings this action seeking a declaratory judgment "for the purpose of determining the parties' respective rights and obligations under the insurance policy issued to" MNR. Doc. #43 at 1.[1] The instant insurance coverage dispute involves water damage to MNR's real property from a purported automatic sprinkler malfunction. See generally id. at 6-7.[2]

On or about February 3, 2019, MNR's representative discovered water damage to the fifth floor of MNR's hotel, which is insured by United. See Doc. #61 at 2; Doc. #43 at 8, ¶42. "Shortly thereafter," MNR notified United of the loss. Doc. #61 at 2; see also Doc. #44 at 6, ¶58. On February 6, 2019, an

---

[1] MNR has asserted counterclaims for breach of contract and bad faith. See generally Doc. #44.

[2] As will be discussed further below, MNR contends that United has changed its primary coverage defense during the course of this litigation. See Doc. #59-1 at 1-2.

2

independent adjuster hired by United, Custard Insurance Adjusters ("CIA"), conducted an initial inspection of the property. See Doc. #59 at 2; see generally Doc. #61-1 (February 13, 2019, report of inspection). The February 13, 2019, report of that inspection, which was produced to MNR in redacted form, states that "there could be a potential coverage issue regarding the maintaining of heat in the building." Doc. #61-1 at 3.

On February 12, 2019, United retained and hired an expert engineer, Vertex. See Doc. #61 at 3. United states that it hired Vertex "to inspect the property because of coverage issues." Id. United further represents that just two days later, on February 14, 2019, it retained coverage counsel after having "received the first report from CIA that informed them of a potential coverage issue[.]" Id.[3] On February 14, 2019, United issued a Reservation of Rights letter ("ROR"). See id.; see also Doc. #61-3. The ROR states, in pertinent part: "This letter is being sent because based on the results of the initial inspection of the claim, there are coverage issues. Our investigation of your claim is ongoing. Upon receipt of the Engineer's report, we will

---

[3] The documents submitted for in camera review reflect that United referred this matter to counsel on February 15, 2019, not February 14, 2019. United's privilege log at item number one mistakenly reflects the date of February 14, 2019. See Doc. #61-7 at 1.

3

be back in touch with you." Doc. #61-3 at 2. The ROR details United's policy defenses. See id. at 4.[4]

On March 20, 2019, United's counsel issued a Notice of Examination Under Oath to Victor Antico, the property's hotel manager. See generally Doc. #61-5.

On August 9, 2019, United denied MNR's claim. See Docs. #59-2, #61-6. Five days after denying MNR's claim, on August 14, 2019, United filed this action. See Doc. #1.

## II. Discussion

MNR seeks to compel the production of certain documents withheld by United on the grounds of attorney-client privilege and/or the work product doctrine. See Doc. #59-1 at 2. MNR asserts that documents withheld on the basis of the work product doctrine were created during the ordinary course of MNR's claim investigation and not in anticipation of litigation. See generally id. at 5-9. MNR asserts that it is particularly important that United produce these documents because during the course of this litigation, United has changed the theory under which it denied MNR's claim. See Doc. #59-1 at 1-2.[5] Finally, MNR

---

[4] It is curious that MNR fails to mention the issuance of the ROR in its motion to compel briefing.

[5] MNR asserts that through the filing of the Second Amended Complaint, "United has changed its primary coverage defense in this action from contending that MNR failed to do its best to maintain heat, which is simply untenable based upon the exception for fire protection systems, to contending that the

4

has requested that the Court conduct an in camera review of documents withheld on the basis of the attorney-client privilege because "they were made during the early stages of United's investigation[.]" Id. at 9. The Court granted MNR's request for an in camera review on March 3, 2021. See Doc. #62.

United asserts that the documents at issue have been properly withheld because "they are protected appropriately as attorney/client for the purposes of obtaining legal advice." Doc. #61 at 5 (sic). With respect to the adjuster or expert reports that have been withheld or produced in redacted form, United contends that those documents "are immune from discovery under the 'work product' doctrine." Id. at 7.

The Court first considers the arguments implicating the work product doctrine.

A.   Work Product Doctrine

MNR asserts that United has improperly designated certain communications and reports as protected by the work product doctrine. See generally Doc. #59-1 at 5-9. MNR contends that because these documents "were prepared shortly after the loss of February 3, 2019, during which time United was still evaluating the claim in the ordinary course of its business[,]" they were not created in anticipation of litigation. Doc. #59-1 at 5; see

---

sprinkler system in the hotel was not operational at the time of the loss." Doc. #59-1 at 2.

5

also id. at 8-9. In support of this argument, MNR emphasizes that United did not issue its coverage decision until August 9, 2019. See id. at 7.

United responds that the reports and communications "were sought with an eye toward litigation." Doc. #61 at 8 (citation and quotation marks omitted). United asserts: "There is no requirement that a claim be denied, or a dispute commenced, in order to trigger the work product doctrine. Instead, the focus is on United's determination that they would likely deny a claim and thus became aware of the potential for litigation." Id. at 9. Finally, United contends that MNR has failed to establish a substantial need for documents withheld on the grounds of the work product doctrine. See id.

    1.   *Applicable Law*

"The invocation of the work-product rule is governed by federal law. Accordingly, we look to Fed. R. Civ. P. 26(b)(3) for guidance." Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 471 (S.D.N.Y. 1993) (internal citations omitted). The work product doctrine provides that generally, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]" Fed. R. Civ. P. 26(b)(3). Thus, the work product doctrine applies to any "materials obtained or

prepared ... with an eye toward litigation[.]" Hickman v. Taylor, 329 U.S. 495, 511 (1947).

> For a court considering whether a document was created in anticipation of litigation, the main question is whether the document was prepared because of the prospect of litigation. Documents that were prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation are not protected by the work product doctrine. However, a document prepared in anticipation of litigation that also serves an ordinary business purpose is not deprived of work-product doctrine protection.

Roc Nation LLC v. HCC Int'l Ins. Co., PLC, No. 19CV00554(PAE), 2020 WL 1970697, at *3 (S.D.N.Y. Apr. 24, 2020) (citations and quotation marks omitted). "The party invoking the [work product] privilege bears the heavy burden of establishing its applicability." In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007). If the court finds that a document is protected by the work product doctrine, "the requesting party must show 'substantial need' for the materials and inability to obtain the substantial equivalent by other means without 'undue hardship.'" S.E.C. v. Collins & Aikman Corp., 256 F.R.D. 403, 409 (S.D.N.Y. 2009) (footnotes and quotation marks omitted).

"The application of this doctrine in the insurance context is particularly troublesome because it is the routine business of insurance companies to investigate and evaluate claims." Roc Nation, 2020 WL 1970697, at *3 (citation and quotation marks

7

omitted); see also Pub. Serv. Ins. Co. v. Mount View Realty, LLC., No. 3:15CV00740(AWT)(SALM), 2016 WL 4649803, at *2 (D. Conn. Sept. 6, 2016) ("In the insurance business, not all claim investigation is conducted 'because of' anticipated litigation. Indeed, it is the routine business of insurance companies to investigate and evaluate claims." (citation and internal quotation marks omitted)).

> Some courts have applied a presumption that reports prepared before a coverage decision are not protected by the work product doctrine, while holding that this presumption may be rebutted by the insurer if it demonstrates with specific competent proof that it possessed a "resolve to litigate" when the documents were created.

Roc Nation, 2020 WL 1970697, at *3 (citation and quotation marks omitted).

Other courts have applied a more flexible case-by-case approach, which is fact specific. See id.; see also Mount View Realty, 2016 WL 4649803, at *2 ("Because the very business of the producing party is to evaluate claims that may ultimately ripen into litigation, the determination of what is prepared because of litigation is fact-specific." (citation and quotation marks omitted)). Relevant but not dispositive "factors that help indicate anticipation of litigation include the date the insurance company hired a law firm, the date a reservation of rights letter was issued, and the date the claim was denied."

8

Roc Nation, 2020 WL 1970697, at *2. The Court takes this fact-specific approach here.

   *2. Analysis*

MNR asserts that "United could not have made a firm decision to deny the claim within the first 30 days after it had been submitted, as its denial was not issued until six months later." Doc. #59-1 at 7. United responds that MNR's focus on the denial date "is erroneous, as United became aware of a potential dispute almost immediately following the loss." Doc. #61 at 9. Specifically, United claims that it was during CIA's first inspection, on February 6, 2019, that it first "became aware of the potential for commencement of an adversarial proceeding[.]" Id.

Here, considering the facts before the Court, including the documents submitted for in camera review, United did not anticipate litigation until February 14, 2019, the date on which it issued the ROR. See, e.g., In re Residential Capital, 575 B.R. 29, 44 (Bankr. S.D.N.Y. 2017) (insurance company anticipated litigation when it issued the reservation of rights letter); Mount Vernon Fire Ins. Co. v. Try 3 Bldg. Servs., Inc., No. 96CV05590(MJL)(HBP), 1998 WL 729735, at *8 (S.D.N.Y. Oct. 16, 1998) ("[T]he existing objective evidence establishes that Mt. Vernon did not anticipate litigation until its June 20, 1995 reservation of rights letter."). This is one day after CIA's

9

report of its initial investigation, dated February 13, 2019. See Doc. #61-1. Without any evidence to the contrary, it is reasonable to infer that United did not anticipate litigation until after it had received, and reviewed, this initial report. In addition, and significantly, just one day after the issuance of the ROR, United referred this matter to coverage counsel, who also represents United in this action. "While not determinative, an insurer's referral of a claim to its attorney is a significant factor in determining when the insurer anticipates litigation." Mount Vernon Fire Ins., 1998 WL 729735, at *7.

The documents submitted by United, both with its opposition and for in camera review, reflect that United suspected there would be coverage issues from an early stage of its investigation. However, United has not established "with specific and competent evidence" that its initial investigation efforts, including CIA's inspection of the property and resulting February 13, 2019, report, were conducted outside the ordinary course of United's business and with an eye towards litigation. QBE Ins. Corp. v. Interstate Fire & Safety Equip. Co., No. 3:07CV01883(SRU), 2011 WL 692982, at *3 (D. Conn. Feb. 18, 2011) ("Because all insurance investigations are likely performed with an eye towards the prospect of future litigation, it is particularly important that the party opposing production of the documents, on whom the burden of proof as to the

10

privilege rests, demonstrate by specific and competent evidence that the documents were created in anticipation of litigation." (citation and quotation marks omitted)). Although United may have suspected there would be coverage issues as early as February 7, 2019, the claim was not referred to coverage counsel until February 15, 2019, -- <u>after</u> United received CIA's first report and issued the ROR. Additionally, the Court's review of a withheld communication dated February 18, 2019, suggests that United had taken a coverage position by that date.

United largely relies on the undersigned's decision in <u>Mount View Realty</u>, 2016 WL 4649803. There, the undersigned found that the plaintiff insurance company anticipated litigation when it determined that coverage would be disputed. <u>See</u> <u>id.</u> at *2. As previously stated, the determination of when an insurance company first anticipates litigation is a fact specific inquiry. <u>See</u> <u>id.</u> In <u>Mount View Realty</u>, the date of "anticipated litigation" was over <u>two months after</u> the insured's loss. <u>See</u> <u>id.</u>; <u>see also</u> <u>Mount View Realty</u> No. 3:15CV00740(AWT)(SALM), Doc. #80 at 2 (D. Conn. June 2, 2016). Here, by contrast, United claims it anticipated litigation immediately after the initial inspection of the property. <u>See</u> Doc. #61 at 9. That timing is significant to the Court's analysis because "the actions that an insurance company takes <u>immediately</u> after being notified of a potential claim are almost always part of its ordinary business

11

of claim investigation[.]" Weber v. Paduano, No. 02CV03392(GEL), 2003 WL 161340, at *6 (S.D.N.Y. Jan. 22, 2003) (emphasis added). Nevertheless, even if United determined that coverage would be disputed at such an early stage, there is no evidence establishing that the actions United took before the ROR were taken with an eye toward litigation, rather than as part of its ordinary business of investigating a claim. See QBE Ins. Corp., 2011 WL 692982, at *2 ("A first-party insurer is apt to investigate any claim in the shadow of future litigation, either as a potential defendant if it denies the insured's claim or as a potential plaintiff if it exercises subrogation rights against a third party."). United has failed to meet its burden of establishing that it anticipated litigation, or otherwise had a resolve to litigate, prior to February 14, 2019. See id. at *3 ("Because all insurance investigations are likely performed with an eye towards the prospect of future litigation, it is particularly important that the party opposing production of the documents, on whom the burden of proof as to the privilege rests, demonstrate by specific and competent evidence that the documents were created in anticipation of litigation." (citation and quotation marks omitted)).

MNR seeks the production of unredacted copies of United's adjuster's reports dated February 13, 2019 (privilege log No. 23), February 20, 2019 (privilege log No. 21), and March 5, 2019

12


(privilege log No. 20). See Doc. #59-1 at 7. MNR also seeks the production of materials "pertaining to communications between [United's engineer] Vertex and United's adjuster," which is encompassed in the material listed at log No. 21. See id. at 8-9. United's privilege log also includes an item described as "Correspondence from independent adjuster" at No. 22, which is in fact a "First report" by United's adjuster; that item is listed with a date of September 30, 2019. See Doc. #61-7 at 4. The face of this document, however, is dated February 13, 2019. MNR has not requested production of this document, but the Court presumes that failure is due to the date error in the privilege log, which makes it appear to have been prepared after the date of United's denial letter.

Nevertheless, because February 14, 2019, is the date that United reasonably first anticipated litigation, United shall produce, in unredacted form, the documents listed at privilege log numbers 22 and 23, both of which are dated February 13, 2019, and had been withheld on the basis of the work product doctrine. United shall produce these documents to MNR on or before the close of business on **Tuesday, April 6, 2021**.

As to the documents post-dating February 14, 2019, MNR has not established a substantial need for the documents sufficient to override the protection. See, e.g., Marchello v. Chase Manhattan Auto Fin. Corp., 219 F.R.D. 217, 219 (D. Conn. 2004)

13

("[T]he federal ... rules require that Plaintiff make a showing of substantial need to overcome the work product doctrine. Plaintiff's conclusory allegation that he has a 'substantial need' is not enough to meet the standard."). Indeed, MNR does not specifically argue, or otherwise "cite any caselaw supporting [its] argument that the circumstances in this case merit disclosure based upon substantial need." Gargano v. Metro-N., 222 F.R.D. 38, 40 (D. Conn. 2004).

B. Attorney-Client Privilege

MNR has requested that the Court conduct an in camera review of documents withheld by United on the grounds of the attorney-client privilege. See Doc. #59-1 at 9-10. MNR "questions whether these communications were properly withheld, as they were made during the early stages of United's investigation[.]" Id. at 9. MNR appears to suggest that United hired coverage counsel to conduct an ordinary claims investigation, and therefore the communications are not protected from disclosure. See id. at 10. United responds that MNR is not entitled to the withheld documents because "they are protected appropriately as attorney/client for the purposes of obtaining legal advice." Doc. #61 at 5 (sic).

The parties agree that in this diversity case, Connecticut law applies to the application of the attorney-client privilege. See Doc. #59-1 at 9-10 (citing Connecticut law); Doc. #61 at 5-6

14

(same); see also Fed. R. Evid. 501. "Connecticut has a long-standing, strong public policy of protecting attorney-client communications." Metro. Life Ins. Co. v. Aetna Cas. & Surety Co., 730 A.2d 51, 58 (Conn. 1999). "The privilege fosters full and frank communications between attorneys and their clients and thereby promotes the broader public interests in the observation of law and the administration of justice." Harrington v. Freedom of Info. Comm'n, 144 A.3d 405, 413 (Conn. 2016) (citation and quotation marks omitted).

> Under Connecticut law, there are
>
> four criteria that must be present, in the corporate context, in order for the privilege to attach: "(1) the attorney must be acting in a professional capacity for the corporation, (2) the communication must be made to the attorney by current employees or officials of the corporation, (3) the communication must relate to the legal advice sought by the corporation from the attorney, and (4) the communication must be made in confidence." [Shew v. Freedom of Info. Comm'n, 714 A.2d 664, 670-71 (Conn. 2003)]. The burden of proving each element of the privilege, by a fair preponderance of the evidence, rests with the [party] ... seeking to assert it. State v. Hanna, [191 A.2d 124, 130 (Conn. 1963)].

Blumenthal v. Kimber Mfg., Inc., 826 A.2d 1088, 1096 (Conn. 2003) (footnote omitted) (brackets altered). "The attorney-client privilege in Connecticut protects both the confidential giving of professional advice by an attorney acting in the capacity of a legal advisor to those who can act on it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice." First Aviation Servs., Inc. v.

15

Gulf Ins. Co., 205 F.R.D. 65, 68 (D. Conn. 2001) (citation and quotation marks omitted).

The Court has reviewed the documents submitted for in camera review and finds that United has properly withheld the majority of the challenged documents (privilege log Nos. 1-5 and 7-19) on the grounds of the attorney-client privilege and/or work product doctrine. However, some of the documents do not request or provide legal advice, or otherwise reflect legal confidences or protected mental impressions, and therefore are not protected by the privilege. The following documents shall be produced:

    No. 2 (UNITED_NATIONAL_FIRST_PRODUCTION_000091);

    No. 4 (UNITED_NATIONAL_FIRST_PRODUCTION_000099);

    No. 12 (UNITED_NATIONAL_FIRST_PRODUCTION_000276);

    No. 13 (UNITED_NATIONAL_FIRST_PRODUCTION_000295);

    No. 18 (UNITED_NATIONAL_FIRST_PRODUCTION_000710); and

    No. 19 (UNITED_NATIONAL_FIRST_PRODUCTION_000729).

These documents are email transmittal cover sheets. The face of the documents do not reflect any privileged information, or confidential work product material. See, e.g., Travelers Indem. Co. v. Northrop Grumman Corp., No. 12CV03040(KBF), 2013 WL 1087234, at *3 (S.D.N.Y. Mar. 12, 2013) (The Court ordered production of a transmittal cover sheet where "the statement on

the face of the document is not privileged and does not reflect work product.").

United shall produce these documents to MNR on or before the close of business on **Tuesday, April 6, 2021.**

### III. Conclusion

For the reasons stated, MNR's Motion to Compel [**Doc. #59**] is **GRANTED, in part, and DENIED, in part.**

SO ORDERED at New Haven, Connecticut, this 1st day of April, 2021.

                                              /s/
                                      HON. SARAH A. L. MERRIAM
                                      UNITED STATES MAGISTRATE JUDGE